## DAVID WILEY, trustee &c.,

### *v.*

## WILLIAM MORRIS et al.

A testator gave to his son (the defendant) all the implements, materials &c. in his oil-cloth factory, which were to be valued at cost, and sufficient money added to such valuation to make a total of $30,000. He then gave to trustees (the complainant) all the residue of his estate, to permit defendant to use and enjoy the land and buildings constituting his oil-cloth factory, without rent or charge, so long as defendant carried on the business alone, without a partner, the defendant to pay all taxes thereon and keep the works in good repair, make all improvements and keep the same insured at his own expense, otherwise the premises were to be sold &c. The defendant received the tools, stock &c., and also the money, which, added to the valuation, made up the $30,000. The factory itself was appraised at $14,000. The complainant expended $2,000 in finishing buildings which were unfinished at the testator's death. The cost of the factory, including that expenditure and the cost of the land, was $21,000. The defendant has complied with all the conditions of the trust relative to the taxes, repairs and insurance. He expended, prior to December 31st, 1881, $3,660 in new buildings and machinery and repairs. All the buildings were insured in the complainant's name as trustee. In 1881 one of the buildings, with the machinery therein, was destroyed, and portions of others of the buildings injured, by fire, and the proceeds of the insurance, about $6,000, were paid by the companies to the trustee, and were by him paid to defendant, who expended that and also about $18,000 of his own money in new buildings and machinery, built partly on the trust land and (as to one building) partly on his own adjoining land. The value of the buildings &c. on the trust property has been doubled by the defendant, and new buildings &c., including cost of land, worth $48,000, erected on his own property adjoining, and used by him in connection with the original factory, all of which have been insured by defendant in complainant's name. In 1884 the paint-shop was again burnt, and almost all the other buildings so damaged that manufacturing was suspended until after they had been repaired. The loss was adjusted at $29,000, and complainant has received thereof $21,000, and paid $11,000 to defendant, who has begun to rebuild, and in doing so has placed one of the buildings, in part, on his own land; but even if such part should be severed from the part on the trust lands, the latter would not be essentially impaired. The defendant's reasons for such location are to increase his facilities for business and to reduce the chances of loss by fire.—*Held*, that the defendant is bound to keep the premises insured to an amount equal to the original valuation of the trust buildings &c., and the value of the complainant's improve-

ments, such insurance to be in the name of the trustee; that in making restorations, the plant on the trust property should be kept complete in itself, so that severance of the buildings thereon from those on the adjoining land would not destroy the usefulness of the former as an oil-cloth factory; that any improvements put upon the premises by the defendant are to be regarded as trade fixtures, and subject to removal by him or to allowance for their value; that as but an inconsiderable portion of one building is being erected on defendant's own land, the insurance-money may be applied thereto; that should the defendant fail to insure or repair the premises, or to pay the taxes thereon, the complainant ought to do so, and retain the cost from the defendant's income in his hands; and, finally, that as an infant is interested, the matter must be referred to a master to ascertain and report the facts, although complainant and defendant substantially agree as to them.

Bill for construction of will, and instruction of trustee as to his duty thereunder. On final hearing on bill and answers.

*Mr. M. P. Gray*, for complainant.

*Mr. W. T. Hilliard*, for defendant William Morris.

THE CHANCELLOR.

John H. Morris, deceased, late of the county of Salem, died in September, 1879. By his will, which is dated August 30th in that year, after directing payment of his debts and funeral expenses, he provides, amongst other things, as follows:

"I give and bequeath to my son, William Morris, the tools, implements, materials, stock in trade, unfinished and finished goods, and other appurtenances of my oil-cloth manufacturing business in the city of Salem, the same to be valued at a cost valuation; and I also give to him as much money in cash as shall be sufficient, when added to such valuation, to make the total of such valuation and said money in cash to amount to the sum of $30,000; and this bequest is to take effect at once upon my death, unless before that event I shall have given to my said son the said goods, chattels and personal property, and said cash mentioned hereinbefore in this paragraph; in which case this bequest shall be void. * * * I give, devise and bequeath unto David Wiley, of Salem, New Jersey, and William Summerill, son of Garret Summerill, of Upper Penn's Neck, in said county, and the survivor of them, all the rest and residue of my real and personal estate, of whatsoever kind and wheresoever situate, of which I may be seized and possessed, or to which I may be entitled at the time of my death; to have and to hold unto the said David Wiley and William Summerill, and to the survivor of them, and to

Wiley v. Morris.

the heirs and assigns of such survivor forever. In trust, nevertheless, and this bequest and devise is made upon the following express trusts and confidences —that is to say, in trust that the said David Wiley and William Summerill, and the survivor of them, shall permit and suffer my son, William Morris, to have, hold, occupy and enjoy the land and premises, in the city of Salem, belonging to my oil-cloth factory, without rent or charge, so long only as my said son shall continue, personally, to carry on the said oil-cloth business solely, without any partner; my said son paying all taxes assessed on said premises and keeping the same in good repair, and making all improvements thereon and keeping the same insured at his own expense. And in case my said son shall not continue, personally, to carry on said business solely, without any partner, then, in further trust, to sell and convey the said oil-cloth factory, land and premises by good and sufficient deeds in the law as said trustees, and the survivor of them, may deem to the best advantage, and invest and apply the purchase-money in the manner hereinafter directed as to the residue of my estate."

The will also gives to William Morris the income and rents of all the rest of the estate for life; at his death the property is to go to his child or children, with substitution of issue in case of decease, and limitation over to the testator's brother Josiah and his sisters Mary and Emma. The will appoints Messrs. Wiley and Summerill executors. It was proved by Mr. Wiley alone. Mr. Summerill renounced, and refused to serve as executor or trustee. William Morris, soon after the testator's death, received the tools, stock &c. and the cash to make up the difference between the amount of the valuation thereof at cost and $30,000. In the inventory and appraisement, filed by Mr. Wiley, and which were made October 2d, 1879, the oil-cloth factory property was appraised at $14,000. The trustee expended about $2,000 subsequently in completing a part of the buildings of the property which were unfinished at the testator's death. The cost of the property, including this latter expenditure and the cost of the land, was $21,067.23. William Morris went into possession of the premises under the provisions of the trust, and has complied with the conditions as to the payment of taxes, keeping the property in repair, and insuring it at his own expense. He has also been at the expense of all improvements put thereon. He expended prior to December 31st, 1881, in building a new building and in improved machinery and re-

pairs upon the trust property, $3,660. He insured the trust property in the name of the trustee. On or about December 31st, 1881, one of the buildings and the machinery therein were destroyed, and portions of others of the buildings injured by fire. The insurance money, $6,077.11, was paid to the trustee, and was by him handed over to Mr. Morris, to be expended in restoring the property. This was done. Mr. Morris also put other buildings and machinery on the premises at his own expense, as they became necessary for the business, and, in doing so, spent a large sum of money. One of the buildings restored —the paint shop—was rebuilt partly on the trust land and partly on land adjoining, owned by Mr. Morris. The cost of the restoration and improvements made on the trust property by Mr. Morris after the fire, was $24,503.38, including the $6,077.11 insurance-money. The value of the plant on the trust land alone, estimated at the appraised valuation, was doubled. The whole plant, including the valuable improvements put by him on the adjoining land bought by him for the purpose, to be used in the business, was worth, including the cost of those lots, $48,000. The premises, as thus restored and improved, including the buildings and improvements put by him on his adjoining lots, were insured by Mr. Morris, and, as before, in the name of the trustee. The premiums therefor were paid by Mr. Morris. On or about April 13th, 1884, the buildings again took fire. The paint shop was destroyed, and almost all the other buildings on the trust property were so damaged that the business could not be carried on until repairs were made. The insurance-money was paid to the trustee. The amount of loss was adjusted between him and the insurance companies at $29,192.58. Of this amount he has received $21,209.73 up to this time. Mr. Morris has set about restoring the buildings and machinery on the trust land, and for that purpose has received from the trustee on account, $11,500. He gave a receipt for the money June 14th, 1884. The instrument contains a statement that he will erect and complete, with the money so paid to him, upon the trust land, buildings and machinery of the same character and extent as those destroyed.

In the reconstruction and restoration contemplated he has so located one of the new buildings that a part of it is not on the trust land, but is upon his adjoining land. If, however, that part were severed from the part which is on the trust land, the value and usefulness of the latter would not be essentially impaired. His reason for such location of that building is, that it is necessary in order to furnish adequate accommodation for his increased business, and to reduce the chances of destruction or damage by fire. In the restoration already made, the $11,500 and $9,867.33 more, have been expended, and Mr. Morris insists that he has a right, not only to apply the insurance money to erecting those buildings, placing part of them on his own land, but has a right to the whole of that money, and that the trustee holds it merely in trust for him. He claims that the insurance was for his own benefit and not for that of the trust; but he acknowledges his liability to do whatever is necessary to preserve the value and efficiency of the trust property as he received it. A question having arisen between him and the trustee as to their respective rights in the premises, the latter has brought this suit to obtain a construction of the provisions of the will creating the trust, and for instructions as to the respective rights and duties of himself and Mr. Morris under the trust.

He asks the following questions: Whether, under the will, Mr. Morris is bound to keep the buildings and machinery on the trust land insured beyond the appraised value thereof, as stated in the inventory filed by the executor. Whether the insurance Mr. Morris may effect is to be for his personal benefit, or for the benefit of the trust. Whether, in case Mr. Morris fails to pay the taxes, keep the property in good repair, and keep it properly insured, or fails to do any of those things, the trustee should do them out of the income of the other property in his hands in trust for Mr. Morris. Whether Mr. Morris has any claim upon the trust property for or in respect of any improvements he may put thereon. Whether the insurance-moneys recovered by the trustee can lawfully be applied to or for buildings or machinery located outside of the trust land; and what disposition the trustee should make of the insurance-money still in his hands.

As has already been seen, Mr. Morris, by the terms of the trust, is bound to pay all taxes assessed upon the trust property, to keep it in good repair, and to keep it insured, at his own expense, so long as he shall occupy it. And he is entitled to occupy it so long as he shall carry on the business of manufacturing oilcloth there alone, without a partner. When he ceases to occupy it the property is to be sold, and the proceeds of sale are to be invested in the same way in which the trustee is directed to invest the "residue" of the estate. The provision that Mr. Morris shall keep the property insured, at his own expense, is manifestly like the other conditions for payment of taxes and keeping the property in good repair, for the benefit of the trust. The insurance is to be for the benefit of the trust estate, but he is to pay for it. The obligation to keep the premises in good repair would of itself, irrespective of the obligation to insure, require him to restore or rebuild in case of damage or destruction by fire. *Story's Eq. Jur.* § *101; Re Skingley, 3 Macn. & G. 221.* But he is not bound to insure to an amount beyond the value of the buildings and machinery as he received them from the estate. That insurance should be in the name of the trustee. The rest of the value of the property has been created by Mr. Morris by the expenditure of his own money in improvements thereon. He is entitled to the benefit of insuring that value on his own account. He has the right to have the insurance-money received for the buildings &c. insured for the benefit of the trust estate, applied to the rebuilding and restoration of that property, so long as he shall continue to carry on the business there under the provisions of the trust. If he fails to insure according to his obligation, the trustee should himself insure and pay the premiums of such insurance as Mr. Morris is bound to provide, out of the income of the latter in his hands. And so, too, if Mr. Morris fails to pay taxes or to keep the buildings and machinery on the trust property in good repair. The will provides that Mr. Morris shall make all improvements that shall be made on the premises, that is, if he wants any improvements in buildings or machinery &c. he is to make them at his own expense, and they are not to be made at the expense of the trust

estate. The testator gave him the use of the property for the purposes of trade. He anticipated that he might require improvements, and gave him permission to put them there. When put there they are to be regarded as trade fixtures put upon demised premises by a tenant, would be, and Mr. Morris will have the same right of removal thereof that such tenant would have. If, at the end of his occupation, they remain there, he will, in equity, be entitled to compensation for them to the extent to which they may enhance the value of the property.

The bill alleges that he proposes to build the paint shop, which is a large and important building, partly on the trust land and partly on his own adjoining land, and that to so build it would greatly impair the value of the part which will be on the trust land, inasmuch as it could not be severed from the other part without thereby materially detracting from its usefulness. The answer, on the contrary, states, and the diagram annexed thereto shows, that the paint shop has already been built entirely on the trust land, and that all of the buildings except the grinding-room building are built entirely on the trust land, and that the part of that building which is built or to be built on Mr. Morris's land has cost, if finished, or will cost when completed, only $514.69, and can, if or when built, be readily separated from the part which is on the trust land, and that such separation would be without injury to either part. It appears by the answer that Mr. Morris has already expended, in the restoration of the trust property, $21,367.33. There can be no reasonable objection, under the circumstances, to paying the cost of the grinding-room building out of the insurance money, although part of it is not on the trust land.

In any restoration of the property, the plant on the trust land should be kept complete in itself for the purposes for which it was designed, so that a severance of the buildings not on the land from those upon it would not destroy the usefulness of the latter as an oil-cloth factory plant. It is stated in the answer that the buildings now on the trust land are themselves a complete plant for the manufacture of oil-cloth, and that the plant on the trust

land is of greater capacity and value than it was when received by Mr. Morris.

The trustee should pay over to Mr. Morris the balance of the insurance-money in his hands, or which may be received by him, from the fire of April last. The answer states that the reason why Mr. Morris insured the whole property in the name of the trustee was that he was ignorant of his rights in the matter, and supposed that he could not insure in his own name; but he avers that he always thought that the insurance money would be his, and under his control.

The following, then, are the answers to the questions propounded:

Mr. Morris is not bound to keep the buildings &c. on the trust property insured to an amount exceeding their value at the testator's death as increased by the expenditure of the trustee in finishing buildings.

The insurance which he is bound to keep up is for the benefit of the trust estate, and should be in the name of the trustee.

Should Mr. Morris fail to insure according to his obligation to the trust estate, or should he fail to pay the taxes or make the requisite repairs, the trustee should do those things and pay for them out of the income in his hands coming to Mr. Morris.

As to the improvements put by him upon the property, Mr. Morris has the rights of a tenant putting trade fixtures upon the demised premises, and he will, on sale of the property, be entitled in equity to compensation for any existing, permanent improvements put on the trust land by him at his own expense, to the extent to which they may enhance the value of the property at the sale.

The trustee may allow the insurance money in hand or to be received for the loss from the fire of April last, to be applied to paying the cost of the new grinding-room building. He should pay over the balance of that insurance money to Mr. Morris.

Although the bill and the answer of Mr. Morris do not differ in any essential point of fact, yet as there is no proof in the case to bind the infant defendant, there must be a reference to ascer-

tain the amount for which, on the principles expressed in this opinion, Mr. Morris should insure in the name of the trustee; also, whether the plant on the trust land is complete and as valuable as it was when Mr. Morris received the property from the estate, and whether, if the building or buildings which Mr. Morris proposes to build partly on his own land and partly on that of the trust estate, be so built, the part or parts built on his land can be separated from the other without material damage to the latter, and any other fact which should be established by proof, in order to make a valid decree as against the infant.